MARY BEADLESTON, Appellant, *v*. JOHN B. ALLEY *et al.*,
Appellants, Impleaded with THE UNITED STATES TRUST
COMPANY, Respondent.

*Supreme Court, Second Department, General Term, December 9, 1889.*

*Discontinuance. Practice.*—Where a stockholder, on the receiver's
refusal to bring an action, commenced a suit in behalf of himself and
other stockholders, making the receiver a party defendant, the other
stockholders failed to join, and the defendants demanded no affirmative
relief between themselves, but the receiver answered asking the dismissal
of the complaint with costs, such stockholder may without notice to
the receiver or other stockholders, settle and discontinue the action
before the entry of judgment.

Appeal from order vacating an order of discontinuance.
The facts appear in the opinion.

*Grove M. Harwood*, for plaintiff, appellant.

*Robert G. Ingersoll*, for appellant, Alley.

*H. M. Herman*, for appellant, Harpending.

*Edward W. Sheldon*, for respondent.

PRATT, J.—The attitude of the Trust Company and those
whom it represents in this case does not commend itself to
any especially favorable consideration. It was appointed
receiver of the Mining Company April 8, 1884, in a sequestra-
tion suit brought by Robbins upon a judgment in his favor
for some $20,673.51. On May 3, 1887, the plaintiff, a stock-
holder of the company, by letter, requested it to bring an
action against the other defendant, for the relief sought by

this action.   After six days the company replied by letter, through its counsel, from which it may be fairly presumed that they had satisfied themselves that such an action could not be maintained, and formally refused to sue.   Thereupon the plaintiff and two or three of the smaller stockholders who were clients of Mr. La Grange and to whom alone he owed professional duties in this matter, brought separate suits, joining the Trust Company as defendant, as they were bound to do, to compel Alley, Harpending and others to account for alleged misconduct in fiduciary relations towards the Mining Company, whereby the rights of stockholders had been injured.   His suit was in behalf of the plaintiff and other stockholders, but it was, nevertheless, her suit and wholly subject to her control.   The Trust Company quite unnecessarily appeared and served an answer, in which it demanded that the complaint be dismissed, with costs.   There is no intimation that it or any other defendant ever sought any affirmative relief against any other defendant, and certain it is that no defendant ever served its or his answer against any other defendant.   Under those circumstances, I think, we must hold that since the Code, §§ 521, 1204, no relief could have been granted as between these co-defendants unless in consequence of some duty which arose out of the peculiar relations of the Trust Company to the action, a point which I shall examine later on.   Having commenced the suit plaintiff sought the assistance of other parties interested in the Mining Company.   None of them ever formally came into the action as parties so that they were ever in a position of peril from liability for costs.   They finally concluded that it was desirable for them to participate in the trial, but they did not depend upon the plaintiff or her counsel in that respect at all.   On the contrary, they employed their own counsel, and, as I judge, pretty clearly drew the distinction between their position and that of the plaintiffs.   Their counsel was careful on the trial to state to the court that he appeared for them, which was another form of stating that

he did not appear for the plaintiff. I do not overlook the agreement between Mr. La Grange and Mr. Prince. But that seems to have been purely personal so far, at least, as Mr. Prince was concerned, and, if any wrong has been done there, it may be fully redressed in a proper action for that purpose. True, these outside stockholders did pay some money towards the prosecution of the action, but it was all done with the express qualification that they were not parties or entitled to the rights of parties, certainly not subject to the liabilities of parties. They wanted to fish from the plaintiff's boat and with her tackle, and simply brought along their own lunch and offered plaintiff some of it in consideration of her courtesy in permitting them to fish at all. Nothing can be plainer than that they had no standing whatever in the action. The best commentary on this phase of the case is that they do not now claim any standing in court.

We may, therefore, dismiss all allegations by way of criticism, whether moral or legal, on plaintiff's conduct in settling the case so far as they are concerned, unless perhaps the receiver may in some way represent them. It is thus far plain that the plaintiff had the right to settle her own grievance against the parties who had done her the alleged wrong ; and it was none of the other stockholders' business how or by what means she did it. Indeed, I fail to see why they were not treated with fair courtesy and reasonable consideration in this very particular. Mr. La Grange seems to have fully conferred with the counsel about all negotiations for the settlement ; and she did not cut loose from them until they made demands for greater proportions than she was disposed to accept and thus became a positive obstruction to her disposition to settle. They had been invited to ride ; she simply refused to allow them to drive. She stood alone liable for the costs of the action, the event of which was by no means certain. Indeed the learned trial judge had clearly expressed grave doubt about his conclusion to sustain the action at all. Hence the settlement and discon-

tinuance of the action fall wholly within and are justified by the rule established in this district in the Tremain case unless there is something in the peculiar relation of the Trust Company to the action, a point which I will now examine.

Let us in the first place observe that the trust company's rights are *strictissimi juris.* Under the circumstances disclosed on the trial it would seem to have been a pretty strong case for original action on[1] its part. Perhaps it was not originally bound to bring the suit unless indemnified against expenses and costs; but no such question arose. Its refusal to act was placed on other grounds. Its lawyers said: " As at present informed of the rights of the parties we must decline," etc. This was, therefore, a clear election that it would not act because it then thought that there was no cause of action. It, therefore, elected to have nothing to do with the action voluntarily. Plaintiff then brought the company in as a formal party. Again did it have an opportunity of coming in and *asking* the benefit of the action; but it did not do that. It might have suffered default without harm to itself, for it cannot be presumed that the court having discretion over the matter of costs would have suffered it to be injured in that respect if it had not appeared at all. But it did appear and did repudiate all responsibility for the action by a practical denial, or that which amounted to a denial, of the plaintiff's material allegations. It, therefore, did all that it could to obstruct the plaintiff and prevent her from the establishment of her alleged rights at that stage of the action. Doubtless that was not the motive, but it was, nevertheless, the result of its conduct.

Not only this, it asked costs for being thus involuntarily brought into the controversy. And thus, in every way, did this trust company manifest its refusal to avail itself of this action, instead of interposing a general answer, pleading its ignorance of its rights and duties and making itself the instrument of the court in protecting the rights of the stockholders, as it might, not to say ought to, have done. True, it

took no active part in the trial, and there is no evidence of its active opposition there; but it is somewhat significant that Robbins, at whose instance the company was appointed, did not seek his opportunity of appearing on the trial through this receiver as his trustee, but through the mere courtesy of the plaintiff. I have already adverted to the fact that no answer seeking affirmative relief was ever served on the principal defendants. Indeed, that was precluded by the very nature and character of the trust company's answer itself. And thus do we plainly see that that company elected to have nothing to do with this action as a means of assisting anybody interested in this mining company. It is not material to inquire into the motives which led to this election. Doubtless they were expressed in the original letter of its counsel, declining to bring the suit. But no matter, the fact of its election stands out strong and clear. It is, therefore, plain that this company's technical standing as a party to this action ought not to be made use of to break up and destroy the rights of the plaintiff secured through this settlement, unless it be necessary in order to protect the rights of others. Let us now see if any such necessity exists. I see none. The discontinuance did not, in any way, embarrass the trust company in the performance of any duty, nor any other party interested in the mining company in securing any right; at least, if there was any difficulty of that character it was not disclosed by the moving papers. I do not overlook the point that it had the right to apply for costs. But that was not a substantial right in this equity action, and when we consider the attitude of the trust company in the action, really aiding defendants in obstructing the plaintiff's efforts to obtain relief, it is difficult to understand how any trial judge, in view of the decision in the case, could have awarded costs in its favor, as matter of discretion.

Now the plaintiff doubtless relied upon all those considerations in determining to abandon farther efforts in the action, and to accept the settlement which was offered and which

she had the undoubted right to accept.   Discontinuance, not as a mere matter of favor, but in reality, was doubtless the consideration for the payment by the defendants who settled. I fail to see why plaintiff and these defendants had not a plain right to rely on this situation.   How, on the one hand, is the trust company injured by the discontinuance?   Manifestly neither the action nor the order of discontinuance can operate as a bar or estoppel upon any right of the trust company. or any beneficiary of its trust.   It may, therefore, bring its own action if its doubts about the validity of the cause of action have been removed by the result of the trial.   So, too, if they remain, it may again refuse to proceed, and let Mr. Clews or any other interested party sue for himself.   Why, on the other hand, should the plaintiff be deprived of, or imperilled in realizing the fruits of her diligence which have been thus obtained in spite of the opposition of her trustee? Considered as a matter of equity, it is extremely difficult to suggest an answer.   I confess my inability to see any.

But it is said that the trust company had a right to come in under this judgment.   But there was, as yet, no judgment.   All that can be said is that there might have been a judgment if plaintiff had chosen to enter it, that there were findings, and a judgment drawn and all ready to enter.   But that does not alter the fact that it was not entered.   Plainly the whole force of the trust company's argument lies in the assumption that it was plaintiff's *duty* to enter it, and it is just there that the company's argument utterly fails, as it seems to me.   Plaintiff owed no such duty to anybody.   And besides that, it is more than doubtful if she would have owed that duty to this company, if to anybody, after its plain election.   Was this suit in behalf of this trust company? Nay, was it not in behalf of the beneficiaries of this company's trust as receiver, as distinguished from the company itself, and despite of the company?

Did not this company *quoad hoc* repudiate the trust obligations?   Could there have been any right of action in favor

of any stockholder, the plaintiff or anybody else, *until* the trust company repudiated the right to sue? How then had this company any right to control this action in any sense? Where is the basis for the suggestion of duty by this plaintiff to this trust company which had thus refused to perform its duty towards her? Is not this a plain case where the trustee renounces the trust *quoad hoc* and the beneficiary accepts that renunciation by bringing suit in his own behalf? Who then owns the cause of action; the beneficiary or the defaulting trustee? On what possible ground can it be said that plaintiff in any way represented that company? She may in a certain qualified sense have represented stockholders and creditors, but that is another affair. She had a right to stop that sort of representation at any time when she chose to do it. *Non constat,* she deliberately went to the very verge of her choice in that respect, procuring the decision and filing it, producing the settlement of the judgment of the trial judge and his *fiat* thereupon but keeping it, withholding its entry for the express purpose of saving her control of the action.

Very likely some of the other parties might have caused the entry of the judgment; but that would have been for the purpose of appeal. Could this trust company have done even that? How was it assigned? We by no means concede that this judgment was such a judgment as would have terminated plaintiff's control over the action; we incline to think it was not. We simply hold that until that judgment was entered there is no ground for that contention. The case is, therefore, reduced to the simple question whether or not a plaintiff, after or as part of a settlement, may, without notice to a purely nominal party, discontinue a suit in which parties have deliberately taken the position in which these parties stood. I see no reason why it should not be done, or why plaintiff should be compelled to risk the benefit of a settlement, and the peril of costs and expenses of the appeal which was plainly intended for the sole benefit of a defend-

ant whose conduct and attitude in the action was such as this trust company's obviously was up to that time.   Could it take back its election thus deliberately made on the advice of counsel, after this prolonged and uniform affirmance of it?

The notice of motion would have been a mere and meaningless formality.   The only effect would have been to afford an opportunity to make an appeal to the discretion of the court for costs; a discretion which ought not to have been exercised in its favor.

The trust company, therefore, stands upon a purely technical rule of practice, the want of notice, which represents no real or substantial right.

We have not overlooked the point that possibly the statute of limitations might have been an obstacle to a new action.   We do not see how that could well be so in view of the fact that these defendants were liable as trustees, if at all.   But be that as it may, no such question can be raised on these papers, and even if it could be, it is a question which the trust company must settle between itself and the beneficiaries of its trust when it comes to render an account of its stewardship.

If these views are correct the order must be reversed.

Order reversed, with costs and disbursements.

DYKMAN, J., concurs; BARNARD, P. J., dissents.

---

### NOTE ON " PRACTICE ON DISCONTINUANCE."

An action, which has been commenced by the service of a summons, is not discontinued by the service of another summons bearing an endorsement that the first was inadvertently served.   Trow P., etc., Co. *v.* Book-binding Co., 16 Civ. Pro. 120.   An order of the court is necessary to effect a discontinuance.   Id.

Where the defendant has not appeared, *it seems*, the plaintiff may enter *ex parte* order, as of course, and without costs.   Id.

An application for leave to discontinue an action is addressed to the legal, not an arbitrary, discretion of the court.   Winans *v.* Winans, 124 N. Y. 140.

In divorce cases, the rule which determines the discontinuance in an ordinary action, cannot be strictly applied. Id.

An action under the taxpayers' act does not lie to restrain the settlement of an action for the violation of the excise law. Olp v. Leddick, 59 Hun, 627.

The overseer of the poor may settle and discontinue an action, brought by himself or his predecessor, when honestly made. Id.

The court will set aside a settlement and discontinuance of an action, to prevent the perpetration of a manifest fraud upon one not a party of record. Dryer v. Shevalier, 59 Hun, 620.

The initiation of a motion to strike out the defendant's name as a party to an action of foreclosure before his appearance, does not dispense with the necessity for a notice of motion, where his subsequent appearance is regular. Stephens v. Hall, 57 Hun, 587.

Where the plaintiffs brought an action as simple contract creditors to set aside certain fraudulent transfers of the defendant, obtained an injunction in the course of the proceeding, and procured the appointment of a receiver who subsequently sold the property, but it appeared that at the commencement of the action the plaintiffs had parted with their claim and were not creditors, it was held to be an erroneous exercise of discretion to permit the plaintiff to discontinue without costs. Sweetzer v. Smith, 54 Hun, 639. It was further held that, under the circumstances, the costs might be limited to one bill without an extra allowance, and that the order of discontinuance should determine that the plaintiffs were not entitled to the injunction, and should appoint a referee to assess the damages occasioned thereby. Id.

In Beadleston v. Alley, reported above, an action was brought against corporate trustees for malfeasance by a stockholder for herself and all others. The receiver, after he had refused to bring the action himself, was made a party. The other stockholders failed to join in the action. The defendants demanded no affirmative relief between themselves, but the receiver answered asking for the dismissal of the complaint with costs. It was held that the plaintiff might settle and discontinue the action before entry of judgment without notice to the receiver.

A stipulation for the discontinuance of an action after judgment deprives the judgment of all its weight or support as a judgment between the parties. Deen v. Milne, 47 Hun, 635. The party against whom the judgment was rendered is entitled to have it vacated. Id.

A discontinuance will not be refused on the ground that it will impair the remedy of the defendant upon an undertaking given by plaintiff on procuring a temporary injunction. Parker v. Commercial T. Co., 3 N. Y. St. Rep. 174 ; 7 Id. 872. Nor because a defendant claims in his answer affirmative relief against a co-defendant who has not appeared in the action. Id.

A suitor has ordinarily a right to discontinue an action or proceeding commenced by him, and his reasons for so doing are of no concern to the court. Matter of Butler, 101 N. Y. 307. A party should no more be com-

pelled to continue, than to commence, a litigation, except where substantial rights of other parties have accrued, and injustice will be done to them by permitting the discontinuance. Id. In such a case, the court, through the control which it exercises over the entry of its order, has a discretion to refuse. The plaintiff may discontinue, where there are no such facts, and nothing appears to show a violation of the right or interest of the adverse party. Id. A refusal of leave, in such case, becomes merely arbitrary and without any basis upon which discretion can exist. Id. The fact that the petitioner desires to discontinue in order to begin an action for the same relief in another court, furnishes no ground for refusing leave to discontinue. Id. The jurisdiction of the court to entertain a later action cannot be tried and determined on such application. Id.

See further on this subject, Islen *v.* Smith, 62 Hun, 221 ; Washington G. Co. *v.* Benjamin, Id. 622 ; Felix *v.* Van Slooten, 45 N. Y. St. Rep. 791 ; Root *v.* Van Duzen, 32 Hun, 63 ; Roberts *v.* Doty, 31 Id. 128 ; Carpentier *v.* Wilson, 14 Abb. N. C. 101 ; Cushman *v.* Leland, 93 N. Y. 652 ; Hoffman *v.* Ridley, 4 Civ. Pro. 41 ; Cole *v.* McGarvey, 6 Id. 305 ; Matthews *v.* Stietz, N. Y. Daily Reg., Jan. 7, 1884 ; Geenia *v.* Keah, 66 Barb. 245 ; Clearwater *v.* Decker, 13 Hun, 63 ; Livermore *v.* Berdell, 60 How. 308 ; Carleton *v.* Darcy, 11 J. & S. 373 ; 75 N. Y. 375 ; People *v.* Tweed, 63 Id. 202 ; N. Y. Hosp. Soc. *v.* Coe, 15 Hun, 440 ; Eberhardt *v.* Schuster, 10 Abb. N. C. 374 ; Duncan *v.* DeWitt, 7 Hun, 184.